IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

JAMES E. BELLAMY )
)
v. ) NO. 3:05-0447
) JUDGE CAMPBELL
THE HARTFORD INSURANCE CO., )
  et al. )

MEMORANDUM

Pending before the Court are Defendant Hartford Life Group Insurance Company's Motion for Judgment on the Record (Docket No. 18) and Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 20). For the reasons stated herein, Defendant's Motion for Judgment on the Record (Docket No. 18) is GRANTED, and Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 20) is DENIED.

Plaintiff brought this action, pursuant to the Employee Retirement Income Security Act ("ERISA"), to recover "short-term disability" payments pursuant to a group policy provided by his employer. The Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

Plaintiff James E. Bellamy worked as a sales representative for, and was insured under a group disability policy provided by, a company called Thomson Holdings. Administrative Record ("AR"), pp. 2 and 5. The Disability Plan Document at issue herein defines "disability" as an injury or sickness which causes physical or mental impairment to such a degree of severity that the employee is "(1) continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and (2) not working for wages in any occupation for which You are or become qualified by education, training or experience." AR, p. 45.

Plaintiff's job as a sales representative required driving to customers, making sales presentations, and lifting sales materials up to 30 pounds as needed for calls. AR, p. 57. Plaintiff has a history of hypertension, hyperlipidemia, anxiety, and arteriosclerotic heart disease with a myocardial infarct in 1997 and bypass surgery. AR, p. 180.

In a Certification for Family and Medical Leave Act ("FMLA") leave dated May 25, 2004, Plaintiff's treating physician, Dr. David Ours, described Plaintiff's medical conditions as extreme weakness/fatigue, anxiety, hypertension, chest pain, and history of cardiac disease. AR, p. 184. Dr. Ours indicated that Plaintiff's condition started May 20 [2004] and would last 12 weeks. Dr. Ours also stated that, during his leave, Plaintiff would be treated biweekly and would attend stress management classes and see Dr. Tacogue, a Nashville cardiologist, for cardiac disease. Id., p. 185.

On June 9, 2004, Defendants approved Plaintiff's claim for short-term disability benefits and stated:

> [W]e are continuing to investigate your claim to determine if you meet the definition of disability, under the terms of the plan. We are initiating a conditional benefit through 06/11/2004 while we continue our evaluation. This is not an admission of liability and we are reserving our right to terminate benefits if our evaluation indicates that you do not meet the requirements under the plan provisions.

AR, p. 83. In that letter, Defendants also requested additional medical records from Plaintiff, including all current medical records from all treating providers, a list from Plaintiff's physician indicating the activities Plaintiff could not do, along with an explanation of the medical reasoning to support those restrictions and limitations, and a copy of the treatment plan and return to work plan. Id. On June 21, 2004, Defendants notified Plaintiff that they were suspending the processing of his claim because they had not received the medical information requested. Id. at 81.

By letter dated June 24, 2004, Dr. Ours stated that he recommended Plaintiff take a leave of absence from work for at least twelve weeks because of his health concerns. AR, p. 180. Dr. Ours indicated that, during the leave time, Plaintiff "will be engaged in stress management counseling and continue to see his cardiologist, Dr. Loyda C. Tacogue and me." Id. Neither the FMLA Certification nor the June 24, 2004 letter from Dr. Ours specifically indicated that Plaintiff was unable to perform the duties of his sales job. Dr. Ours did not provide a list of activities which Plaintiff could not do, along with an explanation of the medical reasoning to support those limitations.

Plaintiff had a scheduled appointment with Dr. Tacogue for June 11, 2004. AR, p. 143. Plaintiff stated that he canceled that appointment because, since he was being seen every couple of weeks by Dr. Ours, Dr. Tacogue's office didn't think it would be necessary since he already had a regular appointment with them on August 6, 2004. Id. Dr. Tacogue's notes indicate that Plaintiff canceled his appointment because he "was getting the care and the support and the medical needs from his primary care physician." AR, p. 169. Defendants' claim notes reflect that a call to Dr. Tacogue's office was made on July 6, 2004, and Defendants were told that Plaintiff canceled the June 11th office visit because he was "under control." AR, p. 58.

The Administrative Record also includes notes from Lana Norton, a licensed psychiatric social worker, which indicate that Plaintiff, on July 5, 2004, had impaired appetite and sleep, anxious mood, sad affect, and appropriate appearance, thought content and flow of thought. AR, p. 178.

3

Case 3:05-cv-00447   Document 22   Filed 12/08/05   Page 3 of 8 PageID #: 54

On July 12, 2004, Defendants denied Plaintiff's claim for short-term disability benefits beyond June 11, 2004. AR, pp. 77-78. Defendants stated: "There were no further physical findings indicating a change in your cardiac status beyond the previously approved benefit period and no mental assessment findings suggesting symptoms that would impact your functionality." Id.

The Administrative Record includes additional correspondence from Dr. Ours on July 19, 2004, in which he states that he would still recommend 12 weeks off from work for Plaintiff. AR, p. 176.

On August 2, 2004, Dr. Ours released Plaintiff to return "to go back to work next Monday." AR, p. 109. On August 11, 2004, Dr. Ours stated:

> He also suffers from stress at home with a mother who has Parkinson's disease. The stress of trying to place her in assisted living and as well as having hyperlipidemia, GERD, hypertension, angina, blood pressure due to stress at home and at work as well as a past history of medical problems including Cardiac disease, followed by his Cardiologist, Dr. Tacogie [sic].
>
> For all the above reasons listed plus the chest pains he experienced carrying his sales bag and when he met with customers, I do not feel Mr. Bellamy could carry out his sales job. For this reason I required him to take the twelve-week leave.
>
> His blood pressure seems to be well controlled with medication and his Cardiologist is following his condition.

AR, p. 149.

Records of Dr. Tacogue, dated August 6, 2004, indicate that the cardiologist agreed with Dr. Ours regarding the recommendation of Plaintiff's taking a medical leave of absence for his condition and stated: "I consider him a high risk for further coronary events particularly with his blood pressure still poorly controlled in spite of what I consider adequate medical therapy . . .." AR, p. 170.

4

Plaintiff appealed Defendants' decision on September 3, 2004. AR, p. 143. Defendants hired a physician, Dr. Georgette Chekiri, to review Plaintiff's medical records and determine the following: (1) whether the medical records provided documented that Plaintiff's time off work was reasonable and related to the signs and symptoms, and (2) what specific limitations or restrictions Plaintiff had from 5/19/04 to 8/9/04. AR, p. 89.

Noting that Dr. Ours referred Plaintiff to his cardiologist for further work up, Dr. Chekiri opined that, given Plaintiff's significant coronary history, "it would have been reasonable for him to be taken out of work until his cardiac work up was complete." AR, p. 91. Dr. Chekiri stated that the cardiac work up should have been done in a matter of days, not months. Id. Dr. Chekiri also noted that Plaintiff canceled his scheduled appointment with the cardiologist and was actually released to return to work before the cardiac work up was complete. Id.

Dr. Chekiri stated: "In short, the rationale for taking the claimant out of work was sound, but the timeframe was severely protracted." AR, p.92. In addition, Dr. Chekiri indicated that a no work status during the period of cardiac work up would be appropriate, but the claimant failed to follow up in a timely manner with the cardiologist's office. Id.

Thereafter, Defendants again denied Plaintiff's claim, noting again that Plaintiff did not receive a cardiac evaluation until after he had been released by Dr. Ours to return to work, or three months after he began his medical leave. AR, pp. 68-69. In addition, Defendants stated: "the evidence does not support that you would have been precluded from performing your regular occupational work activity as Sales Representative." Id. at 68.

5

Plaintiff filed suit in the Circuit Court of Rutherford County, Tennessee, to review the Defendants' decision. Defendants removed that action to this Court, and the parties have filed cross-motions for judgment on the administrative record. Docket Nos. 18 and 20.

STANDARD OF REVIEW

When an ERISA benefits plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the "arbitrary and capricious" standard of review is appropriate. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616, n. 14 (6th Cir. 1998) . The parties agree that the "arbitrary and capricious" standard applies in this case. Docket Nos. 18 and 20.

An ERISA plan administrator's decision on eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir. 1991). When it is possible to offer a reasoned explanation based on the evidence for a particular outcome, that outcome is not arbitrary or capricious. Marchetti v. Sun Life Assur. Co. of Canada, 30 F.Supp.2d 1001, 1008 (M.D. Tenn. 1998). An arbitrary and capricious standard is highly deferential. Id. Before concluding that a decision is arbitrary and capricious, a court must be confident that the decision maker overlooked something important or seriously erred in appreciating the significance of evidence. Id.

In its review, the Court may consider the parties' arguments concerning the proper analysis of the evidence contained in the administrative record, but it may not admit or consider any evidence not presented to the administrator. Wilkins, 150 F.3d at 619.

6

CONCLUSIONS OF LAW

The Court finds that the decision of the plan administrator in this case is not arbitrary or capricious. The decision is "rational in light of the plan's provisions." Defendants have offered a reasoned explanation for their decision based on the evidence before them. The Court does not find that the administrator overlooked something important or seriously erred in appreciating the significance of evidence.

The record before the administrator and this Court reveals that, although Defendants requested it, Plaintiff's physicians did not provide a list of activities Plaintiff could not do and an explanation of the medical reasoning supporting any restrictions or limitations. None of Plaintiff's physicians provided any information concerning limitations or restrictions upon the specific tasks of Plaintiff's job. Neither did they state that Plaintiff was disabled from work or "continuously unable to perform the Material and Substantial Duties of [Plaintiff's] Regular Occupation" or explain the medical reasoning for such an opinion.

The physicians indicated simply that Dr. Ours recommended that Plaintiff take a leave of absence "due to health concerns" (AR, p. 180) and 12 weeks off from work due to "continued elevation of blood pressure and chest pain." AR, p. 176. Not until August 11, 2004, after Plaintiff had returned to work, did Dr. Ours state that he did not believe Plaintiff could carry out his sales job. Id., p. 149.

Lana Norton, the licensed psychiatric social worker, never indicated that Plaintiff was "disabled" from doing his job or recommended that Plaintiff take a leave of absence from work. AR, p.178. Although Dr. Tacogue agreed with Dr. Ours' recommendation that Plaintiff take a medical leave of absence for his condition (AR, p. 170), Dr. Tacogue did not conduct an

7

examination of Plaintiff or even see Plaintiff until after Plaintiff was released to return to work. Id., pp. 169-70.

Finally, as Defendants stated in denying Plaintiff's claim, although Dr. Ours' initial recommendation for a leave of absence indicated that Plaintiff would be engaged in stress management counseling and continue to see his cardiologist (AR, p. 180), Plaintiff did not in fact see the cardiologist until months later. AR, pp. 169-70. Defendants' statement that it offered initial benefits "to allow for the cardiologist to evaluate your reported symptoms in light of your moderate blood pressure elevation and significant cardiac history" (AR, p. 78) was neither irrational nor unsupported by the evidence.

Plaintiff claims that Defendants' decision was based simply on his "missed appointment" with the cardiologist. Docket No. 20, p. 3. As explained above, however, there is other evidence in the record to explain the denial of benefits in this case.

For all the above reasons, Defendants' Motion for Judgment on the Record (Docket No. 18) is GRANTED, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 20) is DENIED, and the decision of the administrator is affirmed.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE